UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
In re:

                                                   Chapter 7

Candy S. Maeder,                             Case No.: 8-12-73429-ast

                        Debtor.
----------------------------------------------------------------X

## MEMORANDUM OPINION AND ORDER DENYING
## UNITED STATES TRUSTEE'S MOTION TO REOPEN CHAPTER 7 CASE

*Issue Before the Court*

Pending before the Court is an issue of first impression in the Second Circuit; whether a bankruptcy estate has an interest in proceeds resulting from the settlement of a claim that had been time barred as of the commencement of the bankruptcy case, but where a post-petition change in the law permitted the claim to be timely filed. The specific claim here arises from abuse injuries allegedly suffered by the Debtor as a minor. Due to the novelty of the issue, the Court appointed Professor Abigail Willie as amicus curiae and thanks her for her thoughtful brief and her service to this Court. For the reasons to follow, the United States Trustee's motion to reopen Debtor's case to administer the settlement of Debtor's abuse claim is denied.

*Facts and Background*

On May 30, 2012 (the "Petition Date"), Candy S. Maeder (the "Debtor"), through counsel, filed a petition for relief under Title 11 of Chapter 7 of the United States Code (the "Bankruptcy Code") [Dkt. No. 1]. In her petition, Debtor scheduled $138,118.93 in unsecured debt [*Id*.].

On July 11, 2012, the Chapter 7 trustee, Kenneth P. Silverman (the "Trustee"), filed a Report of No Distribution.

On September 10, 2012, the Court entered an order discharging Debtor [Dkt. No. 10] and closed the case that same day pursuant to Bankruptcy Code § 350(a).

Seven years later, in 2019, New York state passed the Child Victims Act (the "CVA"), which *inter alia*, revived the statute of limitations for persons holding time-barred claims based on sexual abuse they endured as a child. Those claims could then be filed during a new, one-year period, beginning on August 14, 2019. The one-year period was extended during the COVID-19 pandemic through August 14, 2021, but has since closed.

On September 24, 2020, Debtor utilized the CVA and filed a lawsuit against the Roman Catholic Diocese of Rockville Center alleging that in 1969, decades prior to the Petition Date, Debtor had been the victim of sexual abuse as a child (the "Abuse Claim"). In 2023, Debtor accepted a proposed settlement of $181,276.00 (the "Funds").

On April 30, 2025, the Trustee received information through the ARCHER Systems (a national settlement administration service) regarding the proposed settlement. The Trustee, in turn, notified the United States Trustee (the "UST") about the proposed settlement.

On June 3, 2025, the UST filed a Motion to Reopen the Case (the "Motion") asking this Court to reopen the Debtor's bankruptcy case and appoint a Chapter 7 trustee to administer the Funds as property of the estate [Dkt. No. 13].

On August 6, 2025, Debtor filed a pro se objection (the "Objection") to the Motion [Dkt. No. 15].

During her bankruptcy case, Debtor did not claim an interest in the Abuse Claim on her Schedules of Assets and Liabilities or on her Statement of Financial Affairs, nor did she otherwise disclose any such interest. However, no party in interest has alleged, and no evidence has been presented, that Debtor acted with the intent to exclude the Abuse Claim as an asset or to mislead creditors.

The UST, the Trustee, and the Debtor agree that the time for Debtor to commence an action to recover damages from the Abuse Claim had expired under the applicable statute of limitations prior to the Petition Date. Therefore, as of the Petition Date, Debtor's interest in the Abuse Claim was, at most, an interest in a time-barred claim. On August 14, 2025, the Court held a hearing on the Motion

and the Objection. Given the uniqueness of the issue presented, the Court determined that it would benefit from neutral briefing.

On August 19, 2025, the Court entered an Order appointing Professor Abigail Willie ("Professor Willie") as Amicus Curiae and setting an amicus briefing schedule, which included time for the UST and Debtor to file responses [Dkt. No. 16].

On September 8, 2025, Professor Willie filed her amicus brief [Dkt. No. 20]. Neither Debtor nor the UST filed a response.

On September 25, 2025, the Court held an adjourned hearing at which it advised the UST and Debtor that the Motion would be denied and summarized the reasons therefore, which are further elucidated in this Memorandum Opinion.

### *The Amicus*

Professor Willie is a full-time Assistant Professor of Law at St. Mary's University School of Law. She has been a bankruptcy law specialist, variously in private practice, government service, and academia, for twenty-five years. As part of her years of public service, Professor Willie had served with distinction as a law clerk to the undersigned. The Amicus Curiae has accepted no compensation for her work in this matter. Research-related costs were borne by the Amicus Curiae personally and by St. Mary's University School of Law, as part of the institution's

support of pro bono services and similar contributions by its faculty to the betterment of the law.

*Legal analysis*

The Second Circuit has not previously addressed the issue of whether a bankruptcy estate has an interest in settlement funds resulting from a claim based on child sexual abuse experienced by the debtor prepetition, when that claim had been time-barred as of the commencement of the bankruptcy case, but where a post-petition change in the law permitted the claim to be timely filed following the closing of the bankruptcy case. For the following reasons, the Court holds that while the Debtor's bankruptcy estate does have an interest in the Abuse Claim, the value of such interest is equal to the Abuse Claim's value as of the Petition Date, which is $0.

An estate is created upon the commencement of a bankruptcy case, the contents of which are subject to administration for the benefit of estate creditors. 11 U.S.C. § 541. Bankruptcy Code § 541(a) lists the types of property that are property of the bankruptcy estate and includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Thus, based on a plain reading of § 541, any property a debtor has an interest in at the moment the bankruptcy case is filed becomes property of the estate. This is true

even if the interest is contingent, disputed, or unliquidated, and regardless of whether it is embodied in a judgment. See *Mazzeo v. United States* (In re *Mazzeo*), 131 F.3d 295, 302 (2d Cir. 1997); 11 U.S.C. § 101(5)(A).

By contrast, interests in property acquired by a debtor after the commencement of a bankruptcy case generally do not become property of the estate. *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008) (citing Benjamin Weintraub & Alan N. Resnick, Bankruptcy Law Manual § 5:6 (5th ed. 2008)). There are some exceptions; notably, "[p]roceeds . . . from property of the estate" are themselves, property of the estate. 11 U.S.C. § 541(a)(6).

A debtor can also claim certain interests in property which is property of the estate as exempt, such that it is generally not available to satisfy claims of creditors. See 11 U.S.C. § 522(b), (l); *Schwab v. Reilly*, 560 U.S. 770, 774 (2010) ("Property a debtor claims as exempt will be excluded from the bankruptcy estate '[u]nless a party in interest' objects").

A bankruptcy case is closed upon the full administration of the estate, but may be reopened for cause. 11 U.S.C. § 350(a), (b). The Bankruptcy Code does not define "cause." Determining whether to reopen a case for cause under § 350 "invokes the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case." In re *Warmbrand*, No. 10-76058, 2013 WL 10974204, at *4, (Bankr. E.D.N.Y. Oct. 17, 2013) (citation omitted); In

re *Amaya*, No. 11-78239, 2014 WL 7004848, at *3 (Bankr. E.D.N.Y. Dec. 11, 2014) (citation omitted); In re *Dicks*, 579 B.R. 704, 708 (Bankr. E.D.N.Y. 2017) ("[T]he decision to reopen or not is discretionary with the court … and ought to emphasize substance over technical considerations.") (citation omitted). However, it is an abuse of discretion to deny reopening where there appears to be property of the estate of such "probability, administrability and substance . . . as to make it unreasonable under all the circumstances for the court not to deal with [such property]." In re *Arana*, 456 B.R. 161, 173 (Bankr. E.D.N.Y. 2011) (quoting *Kozman v. Herzig* (In re *Herzig*), 96 B.R. 264, 266 (9th Cir. BAP 1989) (citation omitted)). A bankruptcy case should be reopened to administer newly identified property of the estate "to prevent a windfall" to the debtor. *Id*. (quoting 3 Collier on Bankruptcy ¶ 350.03[1] at 350-7 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010)). Therefore, if the newly identified property is not property of the estate, there is no cause to reopen because such property would not be administrable.

Based on the foregoing, for the UST to prevail on its Motion, it must demonstrate the following:

(i)     Debtor had an interest in the Abuse Claim as of the commencement of her bankruptcy case;

(ii)    Debtor's interest in the Abuse Claim became property of the estate upon the commencement of her bankruptcy case by operation of § 541(a)(1); and

(iii)   the Funds are proceeds of the estate's interest in the Abuse Claim by operation of Bankruptcy Code § 541(a)(6).

***Debtor had an interest in the Abuse Claim as of the commencement of her bankruptcy case.***

One of the reasons for the CVA being passed was to revive claims such as Debtor's, where a minor had been the victim of sexual abuse, but that claim became time-barred with the passage of time.[1] The UST concedes that, as of the Petition Date, the Abuse Claim had been time-barred for decades. Thus, if Debtor proceeded with a lawsuit to prosecute her claim prior to the enactment of the CVA, it would have been dismissed. The Trustee, standing in Debtor's shoes, also could not have prosecuted the Abuse Claim during her bankruptcy case because any such suit would have been quickly dismissed, possibly even before a motion to dismiss was filed. See *Jones v. N.Y.C.*, 571 F.Supp.3d 118, 126 (S.D.N.Y. 2021) (observing that courts "may dismiss an action *sua sponte* on limitations grounds in certain circumstances where the facts supporting the statute of limitations defense are set forth in the papers plaintiff himself submitted") (quoting *Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (citation omitted)). The Court in *Jones* went further and stated that "[a] court does not have to wait for a motion to dismiss, and waste judicial time and resources, but may instead deny a motion to amend to add time-barred claims as futile." *Id*. (quoting *Gilmore v. Gilmore*, No. 09 Civ. 6230, 2010 WL 4910211, at *2 (S.D.N.Y. Nov. 15, 2010).

---

[1] See Press Release, New York State Assembly, Assembly to Pass the Child Victims Act (Jan. 28, 2019) (https://nyassembly.gov/Press/files/20190128.php).

Thus, where a party holds nothing greater than a claim barred on its face by the expiration of the statute of limitations, the claimholder at most holds an interest in property with no value.

Numerous cases recognize that a debtor is to schedule all property, whether that property is of minimal value or not. See *Moreo v. Rossi* (In re *Moreo*), 437 B.R. 40, 65 (E.D.N.Y. 2010) ("[D]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable…..") (quoting *Carlucci & Legum v. Murray* (In re *Murray*), 249 B.R. 223, 228 (E.D.N.Y. 2000) (citation omitted).

Thus, Debtor did in fact have an interest in the Abuse Claim as the Petition Date, but that interest had a value of $0.

***Debtor's interest in the Abuse Claim became property of the estate on the Petition Date.***

Debtor's $0 value interest in the Abuse Claim became property of her estate upon the Petition Date by the plain language of Bankruptcy Code § 541(a)(1). The Bankruptcy Code does not expand or contract interests that are property of the estate, it simply absorbs them. See *Butner v. U.S.*, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be

analyzed differently simply because an interested party is involved in a bankruptcy proceeding.").

Since Debtor did not disclose her interest in the Abuse Claim during her case, the Abuse Claim could not have been administered by the Trustee and remains property of the estate to the extent of its value as of the Petition Date. See *Chartschlaa*, 538 F.3d at 122 ("While properly scheduled estate property that has not been administered by the trustee normally returns to the debtor when the bankruptcy court closes the case, undisclosed assets automatically remain property of the estate after the case is closed."). Because an "estate's rights and interests are the same as debtors–the estate does not gain any right that the debtor did not have at the time the bankruptcy petition was filed, nor does it lose any right that the debtor possessed at that time." *Titan Real Est. Ventures, LLC v. MJCC Realty Ltd. P'ship* (In re *Flanagan*), 415 B.R. 29, 50 (D. Conn. 2009) (citing In re *Hedged-Investments Assocs., Inc.*, 84 F.3d 1281, 1285 (10th Cir. 1996)).

Here, seven years after the Petition Date, the CVA created a new legal interest in the Abuse Claim: a right to file a previously time-barred claim. Because such interest did not exist as of the Petition Date, the revival of Debtor's Abuse Claim did not become property of the estate by operation of Bankruptcy Code § 541(a)(1). Under this approach, both the estate and the Debtor have interests in the Abuse Claim, but only Debtor holds a valuable, prosecutable interest. The

estate holds the same interest that it held as of the Petition Date: an interest in a valueless, time-barred claim.

***The Funds are not proceeds of the estate's interest in the Abuse Claim.***

The Funds are not proceeds of property of Debtor's estate because they represent the liquidated value of the Abuse Claim as revived under the CVA, not the value of the Abuse Claim as of the Petition Date. This valuation approach is analogous to the exemptions dispute resolved by the Supreme Court in *Schwab*. There, the issue was:

> [W]hether an interested party must object to a claimed exemption where … the Code defines the property the debtor is authorized to exempt as an interest, the value of which may not exceed a certain dollar amount, in a particular type of asset, and the debtor's schedule of exempt property accurately describes the asset and declares the "value of [the] claimed exemption" in that asset to be an amount within the limits that the Code prescribes.

*Schwab*, 560 U.S. at 774. The Court ultimately held that "an interested party need not object to an exemption claimed in this manner in order to preserve the estate's ability to recover value in the asset beyond the dollar value the debtor expressly declared exempt." *Id*. The Court reasoned that the Chapter 7 trustee was only allowed to evaluate the propriety of the exemptions based on the debtor's description of the exempt interests, the Bankruptcy Code provisions governing

such exemptions, and the amount the debtor listed as the value of the claimed exemption. *Id*. at 785. The Court then went a step further and stated:

> In reaching this conclusion, we do not render the market value estimate on [debtor]'s Schedule C superfluous. We simply confine the estimate to its proper role: aiding the trustee in administering the estate by helping him identify assets that may have value beyond the dollar amount the debtor claims as exempt, or whose full value may not be available for exemption because a portion of the interest is, for example, encumbered by an unavoidable lien.

*Id*.

Here, had Debtor listed the Abuse Claim as an exempt asset with a value of $0, unknown, or fully exempt, the Trustee would had to have decided whether to file an objection; if such an objection was filed, this Court would have been called upon to decide whether the value of the claimed exemption exceeded the statutory amount allowed for such a personal injury exemption. Because the value of the Abuse Claim to the Debtor's bankruptcy estate in 2012 was $0, it would have been fully exempt.

### *Case law concerning the pre-petition/post-petition divide*

Several circuits have addressed this pre-petition/post-petition divide. The Fifth Circuit in *Burgess v. Sikes* (In re *Burgess*), 392 F.3d 782, (5th Cir. 2004), considered whether a farmer-debtor's interest in federal disaster payments, which was created post-petition, but which stemmed from a disaster which occurred pre-

petition, constituted property of the estate. The *Burgess* debtor received a discharge in 2002. In 2003, the Agricultural Assistance Act (the "AAA") was enacted and provided new rights to crop loss relief payments for farmers who experienced crop losses in 2001 or 2002—losses that the *Burgess* debtor had experienced. After the debtor received his payment, the trustee insisted that the funds were property of the estate as proceeds.

The Fifth Circuit held that, because the AAA—which created the legal right to seek the payment—did not exist as of the debtor's petition date, the debtor only had a "mere hope" that future legislation might provide crop loss relief—and such "mere hope" was not a legal or equitable right that could have become property of the estate under § 541(a)(1). *Id*. at 786. The court observed that the debtor "had no way o[f] knowing whether legislation covering his crop loss . . . would be enacted, and he had no legal or equitable right to such a payment absent such legislation." *Id*. at 787.

The Fifth Circuit reasoned, based on the plain language of § 541(a)(6), that because the interest in the crop loss relief was not property of the estate, the payment for the crop loss was not proceeds of property of the estate. *Id*. Thus, even though the crop loss relief payment was to compensate for a loss suffered by the debtor prepetition, it was not considered property of the estate.

In *Drewes v. Vote* (In re *Vote*), 276 F.3d 1024 (8th Cir. 2002), the Eighth Circuit also considered whether payments made to a farmer-debtor under a federal crop loss relief program were property of the estate. As in *Burgess*, at the time the debtor filed for bankruptcy, the particular legislation had not yet been enacted. This meant that, as of the debtor's petition date, the debtor had only "a mere hope that his losses might generate revenue in the future." *Id*. at 1026.

The Eighth Circuit easily distinguished the facts in *Vote* from those in *Segal v. Rochelle*, 382 U.S. 375, 380 (1966), in which the Supreme Court held that the debtor had an interest in a tax refund that was property of the estate because the related loss carryback was "sufficiently rooted in the [debtor's] pre-bankruptcy past…." The Eighth Circuit observed that unlike the *Vote* debtor, the *Segal* debtor had a pre-petition interest in the refund because the law existed as of the debtor's petition date and thus, did not have a "mere hope" of obtaining a refund based on a law to be passed in the future. See In re *Vote*, 276 F.3d at 1026-27.

Similarly, in *Sliney v. Battley* (In re *Schmitz*), 270 F.3d 1254 (9th Cir. 2001), the Ninth Circuit addressed whether a fisherman-debtor's fishing quotas (which could be sold or exchanged) were property of the estate. When the debtor filed for bankruptcy, federal regulations governing the quotas had not been finalized; they were finalized post-petition. The Ninth Circuit noted that the *Schmitz* debtor was "in the same boat" as the *Vote* debtor. *Id*. at 1258. The Ninth Circuit observed that

the fisherman's quotas were not property of the estate because, as of the debtor's petition date, the debtor "had no more than a hope or expectation that fishing quota regulations would be enacted and that he would qualify for whatever was promulgated. Such an expectation does not rise to the level of property." *Id*.

The reasoning of *Burgess*, *Vote*, and *Schmitz* apply equally here. When Debtor filed for bankruptcy in 2012, not only had the CVA not been enacted, but Debtor also had no reason to believe that any CVA-type legislation would ever be enacted or that any such legislation was in the works. Such thinking would have been nothing more than a "mere hope" and not a cognizable interest that was property of the estate. Debtor had no interest in the Abuse Claim being revived under the CVA as of the Petition Date and did not obtain that interest until 2019, seven years after she received her discharge. In the words of the Fifth Circuit, "§ 541(a)(6) and its reference to proceeds cannot retroactively create a property interest that did not exist at the commencement of the case." In re *Burgess*, 392 F.3d at 787.

## Conclusion

Based on the foregoing, there is no cause to reopen Debtor's case because there is no property of the estate of such probability, administrability, and substance for a Chapter 7 trustee to administer.

Therefore, upon the Court's consideration of the record in this Chapter 7 case; it is hereby

**ORDERED**, that the Motion is denied.



Dated: November 26, 2025
Central Islip, New York

_____
Alan S. Trust
Chief United States Bankruptcy Judge